**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | |
| ) | **No. 2:10-cr-136-DBH-03** |
| **HASAN WORTHY,** ) | |
| ) | |
| **DEFENDANT** ) | |

**REDACTED DECISION AND ORDER ON DEFENDANT'S
MOTION TO DISMISS FOURTH SUPERSEDING INDICTMENT
FOR VIOLATION OF SPEEDY TRIAL RIGHTS**

This case presents a Speedy Trial Act question of first impression in this Circuit: Is the Speedy Trial Act clock (70 days to trial) stopped for a particular defendant during the period between a codefendant's guilty plea pursuant to a plea agreement that the court has not yet accepted and that codefendant's sentencing? After extensive adversarial briefing on the issue, the government unexpectedly stipulated to a statutory violation (not a Sixth Amendment violation) at oral argument on July 27, 2012. The government said that it did so in order to avoid the risk of prevailing on the defendant's motion in this court and proceeding to trial, only to suffer reversal on appeal and the necessity for a retrial.

The asserted Sixth Amendment violation is not conceded, and parts of the Sixth Amendment analysis overlap the Speedy Trial Act violation analysis. Moreover, determining the Speedy Trial Act remedy requires me to consider the circumstances of any violation, and the entire issue implicates the practices of

the Clerk's Office in this District in its Speedy Trial Act calculations.  I therefore proceed to address both the statutory and the constitutional issues, despite the strategic stipulation by the government.

I conclude that one defendant's Speedy Trial Act clock does not stop automatically during the period between a codefendant's guilty plea pursuant to a plea agreement that the court has not yet accepted and that codefendant's sentencing, and that it does not stop under the circumstances here.  I **GRANT** the defendant's motion to dismiss on speedy trial grounds for the statutory violation but, for reasons I state in this opinion, **WITHOUT PREJUDICE**.  I find no violation of his Sixth Amendment right to a speedy trial.

## FACTUAL CIRCUMSTANCES

The defendant Hasan Worthy was first brought before this court on August 9, 2010,[1] pursuant to an August 6, 2010, complaint charging him with a two-day cocaine conspiracy.  Compl., 2:10-mj-139-JHR (ECF No. 1).  An indictment issued on August 17, 2010, which enlarged the length of the conspiracy by a day and caused the opening of a new criminal docket.  Indictment, 2:10-cr-135-DBH (ECF No. 18).  Then on September 22, 2010, Worthy was named in a superseding indictment filed under a different docket number, the current docket number, where two other defendants had already

---

[1] Although none of the three dockets (2:10-mj-139-JHR, 2:10-cr-135-DBH, and 2:10-cr-136-DBH) shows the date of the arrest, August 6, 2010 is the date of the Complaint and that is the date that the defendant's lawyer says that the defendant was arrested.  Def. Worthy's Mot. to Dismiss Fourth Superseding Indictment at 2 (ECF No. 618).

been indicted on August 17, 2010.[2]  The superseding indictment named six defendants including Worthy.[3]   Superseding Indictment, 2:10-cr-136-DBH (ECF No. 51).   On October 6, 2010, a second superseding indictment issued, adding eight more, for a total of fourteen defendants.   Second Superseding Indictment, 2:10-cr-136-DBH (ECF No. 94).   Still a third superseding indictment issued on November 17, 2010, with no change in the number of defendants.   Third Superseding Indictment, 2:10-cr-136-DBH (ECF No. 232). The first guilty plea of a defendant occurred on June 23, 2011, and guilty pleas continued thereafter until the twelfth defendant, Kevin Stuckey, pleaded guilty on October 24, 2011.   Then on October 26, 2011, still a fourth superseding indictment issued.  Fourth Superseding Indictment, 2:10-cr-136-DBH (ECF No. 507).  It no longer named the defendants who had pleaded guilty.  Instead, it named only Worthy and remaining codefendant Daneek Miller.  I granted a motion to dismiss the Third Superseding Indictment against Worthy on February 6, 2012.  Decision and Order on Def. Worthy's Pending Mots. at 5 (ECF No. 572).  Worthy's last codefendant, Daneek Miller, pleaded guilty on March 23, 2012.

The case has been replete with motion practice.   Worthy has filed numerous pretrial motions.   Some earlier motions raised Speedy Trial Act issues regarding the timeliness of indictment filing.   Decision and Order on

---

[2] Ultimately the complaint case docket was merged into 2:10-cr-135-DBH and later I granted a motion to dismiss without prejudice the indictment in that docket number.

[3] Other changes made by the succession of superseding indictments are enumerated in Decision and Order on Defendant's Motions to Dismiss and Government's Motion to Dismiss and for Detention at 3-4 (ECF No. 304).

Def.'s Mots. to Dismiss and Gov't Mot. to Dismiss and for Detention at 5-13 (ECF No. 304); Decision and Order on Def. Worthy's Pending Mots. (ECF No. 572).  But none challenged trial delay until this motion.[4]  On May 22, 2012, the case was set for jury empanelment on July 2, 2012.  Trial List (ECF No. 600).  A trial management conference was scheduled for July 16, with trial to commence July 24, 2012.  On June 27, five days before jury empanelment, Worthy filed this motion claiming that trial had been delayed too long under both the Speedy Trial Act and the Sixth Amendment.  Mot. to Dismiss on Speedy Trial Grounds (ECF No. 618).  I ordered expedited briefing, without cancelling jury empanelment, and a jury was empanelled on July 2.[5]  During the briefing, the Clerk's Office alerted me to a potential issue over how that office had calculated exclusions from the Speedy Trial Act clock.  As a result, before the trial management conference, I issued a Procedural Order, directing the lawyers to review enumerated cases that might be pertinent to the speedy trial motion.  Procedural Order (ECF No. 629).  At the July 16 conference, there was agreement that resolution of the Speedy Trial Act issue depended on whether time could be excluded between guilty pleas and sentencings of codefendants who had plea agreements.  In particular, we focused on the time following the plea of the defendant Dereck Berryan on July 13, 2011, where I accepted the guilty plea but deferred accepting the plea agreement, which

---

[4] I find unpersuasive the argument that Worthy's early challenges to indictment timeliness show that he was objecting to trial delay.

[5] Because the jury has not been sworn, jeopardy has not attached.  In a jury case, jeopardy attaches when the jury is empaneled and sworn.  <u>Serfass v. United States</u>, 420 U.S. 377, 388 (1975) (jeopardy attaches when the jury is empaneled and sworn).

required dismissal of certain counts.  I then delayed the Worthy trial until August[6] to permit further speedy trial calculations, briefing and oral argument of what then appeared to be a serious and disputed issue.  I held oral argument July 27, 2012.

### SPEEDY TRIAL ACT CALCULATIONS

The basis for the Speedy Trial Act calculations are as follows:

Worthy was arrested on August 6, 2010.  Worthy was arraigned in case 10-cr-135-DBH on August 18, 2010.  The Speedy Trial clock did not begin to run until August 21, 2010, however, because the government's Motion for Detention was pending during that time.  Gov't Mot. for Detention, 10-mj-139-JHR (ECF No. 4).  The Speedy Trial clock then ran from August 21, 2010 until September 1, 2010 (12 days).  On September 2, 2010, Worthy filed a Motion to Extend Time, 10-cr-135-DBH (ECF No. 32), which stopped the clock until the motion was decided on September 7, 2010.  The Speedy Trial clock ran from September 8, 2010 until September 16, 2010 (9 days).  On September 17, 2010, the defendant filed a Motion to Extend Time to File Pre-Trial Motions, 10-cr-135-DBH (ECF No. 37), which stopped the clock until September 21, 2010. The Speedy Trial clock ran on September 22, 2010 (1 day).  The clock did not run any further on that indictment because on September 23, 2010, the government filed a Motion to Dismiss the Original Indictment, 10-cr-135-DBH (ECF No. 39).  The motion was fully briefed on November 16, 2010, a motion hearing was held on December 15, 2010, and the motion was granted on

---

[6] In addition, problems had emerged with two of the 14 jurors empaneled for the trial, making completion of this lengthy trial problematic with the empanelled jury.

December 20, 2010.  Decision and Order on Gov't Mot. to Dismiss, 10-cr-135-DBH (ECF No. 47).

So Worthy's Speedy Trial clock had run a total of 22 days when, on October 6, 2010, he became one of fourteen defendants named in a Second Superseding Indictment under a different docket number, 10-cr-136-DBH (ECF No. 94).  Codefendant Regina Goins was the last of those fourteen defendants to be arraigned on that indictment on November 18, 2010.  As a result of the First Circuit's interpretation of a Supreme Court case, Henderson v. United States, 476 U.S. 321 (1986), which in turn interpreted a Speedy Trial Act provision that I will discuss in the next section, "the time line for the last defendant joined usually becomes the time line for all defendants," United States v. Barnes, 251 F.3d 251, 257 (1st Cir. 2001), and thus Worthy's Speedy Trial clock restarted with Goins at zero on November 18, 2010.  A Third Superseding Indictment was filed on November 17, 2010, 10-cr-136-DBH (ECF No. 232), but it made no change in the number of defendants and thus did not affect the clock.

Worthy had already filed a Motion to Suppress on November 11, 2010, which, after supplemental briefing and a recommended decision, was denied on June 10, 2011, 10-cr-136-DBH (ECF No. 384).  In addition, Daneek Miller filed a Motion for Psychological Examination on December 6, 2010, 10-cr-136-DBH

(ECF No. 270), and I found Miller competent on June 29, 2011, 10-cr-136-DBH (ECF No. 403).[7]  Worthy's Speedy Trial clock was stopped during this period.

Worthy's Speedy Trial clock then ran from June 30, 2011 through July 10, 2011 (11 days).  The Speedy Trial clock did not run on July 11, 2011 or July 12, 2011, because Daneek Miller was arraigned and a conference of counsel was held on those days respectively.  The Speedy Trial clock did not run on July 13, 2011, because I accepted a plea of guilty from Dereck Berryan that day.  However, I did not accept Berryan's plea agreement, waiting until the presentence report was prepared, because the plea agreement involved dismissal of certain counts.  See Fed. R. Crim. P. 11(c)(3).  That stopped the clock as to Berryan because of a Speedy Trial Act provision that I will discuss in the next section.  A central issue in this motion is whether it also stopped the clock as to Worthy.

If the pendency of the Berryan plea agreement did not stop Worthy's Speedy Trial clock, then his clock ran from July 14, 2011 through July 19, 2011 (6 days).  Worthy's Speedy Trial clock did not run on July 20 and 21, 2011, because of a sealed motion that I granted on July 21, 2011, 10-cr-136-DBH (ECF Nos. 416 and 418).  The Speedy Trial clock ran from July 22, 2011 through July 26, 2011 (5 days).  The Speedy Trial clock did not run on July 27, 2011, because of a court proceeding.  The Speedy Trial clock ran from July 28, 2011 through August 1, 2011 (5 days).  The Speedy Trial clock did not run on August 2 and 3, 2011, because of a motion and a court proceeding.  The

---

[7] There were other motions filed between November 18, 2010, and June 29, 2011, which tolled the Speedy Trial clock, but that time is subsumed within the days excluded above.

Speedy Trial clock ran from August 4, 2011 through August 17, 2011 (14 days). The Speedy Trial clock did not run from August 18, 2011 through August 23, 2011, because of a pending motion to continue trial filed by Miller, 10-cr-136-DBH (ECF No. 450). The Speedy Trial clock ran from August 24, 2011 through August 30, 2011 (7 days). The Speedy Trial clock did not run from August 31, 2011 through September 1, 2011, because of a pending motion for emergency temporary release by Worthy, 10-cr-136-DBH (ECF Nos. 468 and 478). The Speedy Trial clock did not run on September 2, 2011, because of a court proceeding. The Speedy Trial clock ran from September 3, 2011 through September 5, 2011 (3 days). This is a total of 51 days on the new clock as to Worthy, unless the pending Berryan plea agreement stopped the clock. A Speedy Trial Order stopped the clock by granting defendant Miller's Motion to Continue Trial Date from September 6, 2011 through December 6, 2011, 10-cr-136-DBH (ECF Nos. 443 and 450). The Speedy Trial clock was also stopped from November 9, 2011 through January 26, 2012, because of Worthy's Motion to Dismiss the Third Superseding Indictment, 10-cr-136-DBH (ECF No. 525).[8] The Speedy Trial clock then ran from January 27, 2012 until it reached 70 days on February 14, 2012. After that date, there was a Speedy Trial Act violation as to Worthy, unless the pending Berryan plea agreement had stopped the clock as to Worthy.[9]

---

[8] The motion was decided February 6, 2012. Because it was under advisement for more than 30 days, the clock started to run again on January 27, 2012, before the motion was actually decided.
[9] If Berryan's pending plea agreement did not stop the Speedy Trial clock, it ran from February 15, 2012 through March 22, 2012 (37 days). On March 23, 2012 the clock stopped
*(continued next page)*

ANALYSIS

SPEEDY TRIAL ACT

**1.**      ***Was there a Speedy Trial Act Violation?***

Although the government has lately stipulated to the statutory violation, I find it necessary to assess the violation because it bears upon the remedy and upon future Speedy Trial Act calculations by the Clerk's Office in this District, and overlaps the constitutional analysis.   Generally, the Speedy Trial Act requires that trial commence[10] within 70 days of the filing of an indictment. But the Act excludes from its 70-day time calculations two categories of delay that require attention in this case.

Section 3161(h)(1)(G) excludes "delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government."   That provision applies to Berryan, because I accepted his guilty plea at the Rule 11 hearing, but delayed acceptance of the plea agreement involving dismissal of charges, until I could consider what the presentence report revealed.   Thus, the clock stopped as to Berryan on July 13,

---

for Miller's change of plea. The Speedy Trial clock ran from March 24, 2012 through March 25, 2012 (2 days).  On March 26, 2012 the clock stopped because Worthy filed a Motion to Suppress and Dismiss.  Def. Worthy's Mot. to Suppress and Mot. to Dismiss the Fourth Superseding Indictment, 10-cr-136-DBH (ECF No. 585).  That motion was decided on May 15, 2012.  Decision and Order on Def.'s Mot. to Suppress and to Dismiss, 10-cr-136-DBH (ECF No. 598).  The Speedy Trial clock then ran from May 16, 2012 through May 28, 2012 (13 days). The clock stopped from May 29, 2012 through June 1, 2012 for Worthy's Motion to Substitute Counsel.  Mot. to Substitute Counsel, 10-cr-136-DBH (ECF Nos. 601 and 604).  The Speedy Trial clock ran from June 2, 2012 through June 26, 2012 (25 days).  On June 27, 2012, Worthy filed this Speedy Trial motion and stopped the clock for the last time.  Mot. to Dismiss on Speedy Trial Grounds, 10-cr-136-DBH (ECF No. 618).  Thus, after the 70-day Speedy Trial limit was reached on February 14, 2012, an additional nonexcludable 77 days have elapsed.

[10] Jury empanelment counts as the commencement of trial.  <u>United States v. Rodriguez</u>, 63 F.3d 1159 (1st Cir. 1995) ("It is settled that trial generally 'commences' for Speedy Trial Act purposes on the day the jury is empaneled, even if not sworn.").

9

2011.  Worthy himself, however, has no plea agreement (he has invoked his right to a trial), so that exclusion is not directly applicable to Worthy's Speedy Trial Act calculations.

Section 3161(h)(6)[11] excludes from the 70-day calculations "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."  This is the critical provision for resolving the Speedy Trial Act issue in Worthy's case, because Worthy was charged along with Berryan, whose Speedy Trial Act clock has stopped because of the section 3161(h)(1)(G) exclusion.  The question is whether the Berryan exclusion also affects Worthy because of section 3161(h)(6).  If it does, then there has been no Speedy Trial Act violation as to Worthy.

As I said in explaining the Speedy Trial Act calculations, the First Circuit adjusts the trial clock when a new defendant is joined, because "when a joint trial is in prospect, the speedy trial clock seeks the longest available span of time."  Barnes, 251 F.3d at 257; accord United States v. Casas, 425 F.3d 23, 30-31 (1st Cir. 2005).  That much is clear.  But when a codefendant pleads guilty with a pending but unaccepted plea agreement, is a "joint trial" still "in prospect" such that the clock of a defendant who wants a trial is also stopped?  The Supreme Court case upon which the First Circuit relied said that section 3161(h)(6) is the only exclusion in the Speedy Trial Act that explicitly

---

[11] Section 3161 of the Speedy Trial Act was amended technically in 2008 and at that time section 3161(h)(7) was redesignated section 3161(h)(6).  I will refer to both designations interchangeably.

incorporates a requirement of reasonableness in measuring the allowable period of delay, whereas stopping the clock is automatic for all the other statutory exclusions.  Henderson v. United States, 476 U.S. 321, 327 (1986). The First Circuit likewise cautioned that the single clock rule could be subject to exceptions in egregious circumstances.  Barnes, 251 F.3d at 259.  But the parties and I have found no case where the First Circuit has dealt with delay caused by a codefendant's pending plea agreement.

A handful of other circuits have addressed that issue.  Subsequent to the Supreme Court decision in Henderson, the Fifth Circuit held in United States v. Stephens, 489 F.3d 647, 654 (5th Cir. 2007), that the statutory reasonableness requirement means that Speedy Trial Act exclusions for a codefendant with a pending plea agreement (like Berryan) should not automatically be applied to a defendant (like Worthy) who is challenging Speedy Trial Act compliance for his proceedings: "Attribution of the excludable delay of one codefendant to another codefendant is not . . . automatic; rather, the period of delay must be reasonable."  Stephens, 489 F.3d at 654 (citing Henderson, 476 U.S. at 326-27).

I recognize that the Eleventh Circuit arguably has a different rule.  In a per curiam decision in 2008 with little explanation and no reference to the earlier Stephens decision, the Eleventh Circuit excluded the time between a codefendant's plea and sentencing.  United States v. Childers, 290 Fed. Appx. 253 (11th Cir. 2008).  If the Eleventh Circuit intended to adopt a different rule in the Childers per curiam decision, I believe that the First Circuit would not

follow it in reviewing the Worthy case here for two reasons:  first, the Fifth Circuit reasoning in Stephens is persuasive, whereas Childers gives no reasoning; second, there are important factual differences between the practice described in Childers and the practice in this District.[12]

The Childers court stated:

> Throughout the period of delay between [the codefendant's] plea hearing and sentencing, during which the district court was considering [the codefendant's] revised plea agreement, [this defendant] and [the codefendant] remained codefendants, and up until the date on which the court adjudged [the codefendant] guilty at sentencing, [the codefendant] was free to change his mind and proceed to trial, and the district court was free to reject the plea.

Id. at 253.  In other words, in Childers there remained the risk that the pleading codefendant would seek a trial, thereby implicating the government's interest in conducting a joint trial (rather than two or more separate trials). Unlike the Southern District of Georgia where Childers originated, the judges in this District typically *accept* the guilty plea at the Rule 11 hearing.  They may reserve ruling on the plea agreement, but they still accept the plea.[13]  That

---

[12] In a pre-Henderson Sixth Circuit case, there is discussion consistent with Childers, but it is ambiguous whether the statements are part of the court's holding or merely dicta.  See United States v. Zoeller, 767 F.2d 922, 1985 WL 13444 at *3 (6th Cir. 1985) (stating "delay resulting from the consideration by the court of a proposed plea agreement is excludable, which under subsection (h)(7) would be chargeable to all defendants even if only attributable to one," but then finding that most of the time in question was excluded for other reasons).  I follow the Fifth Circuit's application of Henderson.

[13] That distinction was recognized in Clarke v. United States, 1:10-cv-700-RLV-AJB 2011 WL 3880923 (N.D. Ga. August 9, 2011) ("Here, unlike Childers, the Court accepted Chapa's and Francis' guilty pleas at their Rule 11 hearings and adjudged them guilty at that time.  The Court did not delay the acceptance of their pleas or adjudication of guilt pending review of plea agreements; indeed, Francis did not have a plea agreement.  Thus, the basis for the court's holding in Childers is not present here.  The undersigned does not interpret Childers to stand for the broader proposition that all time between a defendant's Rule 11 hearing and his sentencing is excluded from the calculation of his co-defendant's speedy trial clock as a 'reasonable period of delay' resulting from the defendants' joinder in the case.").  But see United States v. Rauls, No. cr507-021, 2009 WL 507041 (S.D. Ga. Feb. 27, 2009) (although
*(continued next page)*

is what I did in the Rule 11 hearings accepting Berryan's guilty plea on July 13, 2011.

Thus, Berryan does not have the <u>Childers</u> freedom simply to change his mind and proceed to trial. Instead, he must first move to withdraw his guilty plea.[14] Although a defendant may withdraw a guilty plea before sentencing if he or she "can show a fair and just reason," Fed. R. Crim. P. 11(d)(2)(B), withdrawal is not "an absolute right." <u>United States v. McMullin</u>, 568 F.3d 1, 8-9 (1st Cir. 2009). Instead, "'[i]n determining the weight to be attached to a proffered reason, a court ordinarily should focus on whether any of Rule 11's core concerns have been implicated, that is, whether the plea, when entered, was voluntary, intelligent, and knowing.'" <u>Id</u>. (quoting <u>United States v. Negron-Narvaez</u>, 403 F.3d 33, 36 (1st Cir. 2005)). "The court should also consider the following additional factors: 'the plausibility of the proffered reason, the timing of the attempted retraction, the presence or absence of a protestation of innocence, and whether the circumstances cast serious doubt on the bona fides of the original plea.'" <u>Id</u>. at 9 (quoting <u>United States v. Torres-Rosa</u>, 209 F.3d 4, 8-9 (1st Cir. 2000)). "And there is a final barrier that must be surmounted: even if a defendant appears at first blush to meet the strictures of this four-part test, the [district] court still must evaluate the proposed plea withdrawal in relation to any demonstrable prejudice that will accrue to the

government conceded Speedy Trial Act violation, court expressed doubt and referred to <u>Childers</u> as allowing exclusion of the time while the court was considering a codefendant's plea agreement); <u>United States v. Douglas</u>, No. cr507-015, 2009 WL 773598 (S.D. Ga. March 20, 2009) ("the period of delay between a defendant's plea hearing and his sentencing is excludable as to all co-defendants").

[14] [redacted]

government if the defendant is permitted to alter his stance." <u>United States v.</u> <u>Parrilla-Tirado</u>, 22 F.3d 368, 371 (1st Cir. 1994). Those are not easy hurdles to surmount.

It is true that when a defendant pleads guilty under Rule 11(c)(1)(A) in an agreement involving the dismissal of certain charges at sentencing, I inform the defendant (as I did for Worthy's codefendant Berryan) that, if I reject the count-dismissal portion of the plea agreement, he will then have the right to withdraw his guilty plea. But that is an extremely remote contingency,[15] and it does not affect my conclusion.

Thus, following <u>Stephens</u>, and recognizing that the practices of this District are distinguishable from those of <u>Childers</u>, I conclude that exclusion for delay during the consideration of a codefendant's plea agreement should not *automatically* transfer to Worthy.

I proceed next to consider whether, under the *particular* circumstances of this case, there is a reasonable period of delay that should be excluded from Worthy's Speedy Trial Act clock on account of Berryan's pending plea agreement.

When the question is the reasonableness of the delay, both the Fifth and the Eleventh Circuits use a two-alternative approach, which I follow:

> The reasonableness of the delay can be measured in reference to either (1) "the totality of the circumstances prior to trial": or (2) "the actual prejudice suffered by the appellant" as a result of the delay." "In examining the totality of the circumstances of the case, our inquiry

---

[15] I cannot remember rejecting an (A) agreement in over 22 years on the federal trial bench. If I have done so, it has been exceedingly rare.

focuses on the necessity of the delay, giving proper consideration 'to the purpose behind [§ 3161(h)(7)]— accommodating the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." "With respect to the prejudice analysis, relevant considerations include whether the delay impaired the appellant's ability to defend himself or resulted in excessive pretrial incarceration." "Given the fact-intensive nature of the reasonableness inquiry, we review subsection (h)(7) exclusions on a case-by-case basis."

<u>Stephens</u>, 489 F.3d at 654 (internal citations omitted).[16]   I start with the totality of the circumstances.

Courts generally agree that Congress excluded delays attributed to codefendants primarily to maintain the government's ability to conduct joint trials, rather than waste resources by requiring severance and separate trials every time one defendant delays matters in a multi-defendant case.   <u>See, e.g.</u>, <u>United States v. Vasquez</u>, 918 F.2d 329, 336 (2d Cir. 1990); <u>United States v. Rush</u>, 738 F.2d 497, 503 (1st Cir. 1984).   As <u>Stephens</u> points out, however, once a court accepts a guilty plea for a codefendant, "the possibility of a joint trial [of that codefendant and the defendant is] substantially reduced, if not eliminated."   <u>Stephens</u>, 489 F.3d at 654.   <u>Stephens</u> did recognize that the possibility of a joint trial is not *completely* eliminated, because a codefendant still might seek to withdraw his plea.   <u>Id</u>.   But <u>Stephens</u> found that a plea withdrawal was highly unlikely in light of the fact that the court had accepted the plea and the codefendant was expected to testify at the defendant's trial under the terms of that plea agreement.   <u>Id</u>.

---

[16] The Fifth Circuit adopted this test earlier in <u>United States v. Franklin</u>, 148 F.3d 451, 457 (5th Cir. 1998), based upon the Eleventh Circuit's decision in <u>United States v. Tobin</u>, 840 F.2d 867 (11th Cir. 1988).

Similarly in this case, for the reasons I have stated in distinguishing Childers, it is highly unlikely that Berryan would be able to withdraw his guilty plea and proceed to trial.  Moreover, the conventional governmental interest in joint trials has been eroded in this case by the government's charging strategy. In its Fourth Superseding Indictment filed October 26, 2011, the government charged only Worthy and codefendant Miller, removing from the charging document all the other defendants including Berryan who had already pleaded guilty.  The Fourth Superseding Indictment now is the only indictment on which Worthy can be tried, and so the only codefendant with whom Worthy is "joined for trial" (the language of (h)(1)(6)) is Miller.  Previous indictments have been dismissed as to Worthy, the last dismissal being February 6, 2012.  Thus the pendency of the Berryan plea agreement should not be used to stop the Speedy Trial Act clock as to Worthy after February 6, 2012.   Worthy's remaining codefendant, Miller, pleaded guilty on March 23, 2012, but Miller has no plea agreement, so there is no exclusion of time as to him under 3161(h)(1)(G) that could be transferred to Worthy under 3161(h)(6) in any event.  In short, the risk of holding two or more severed trials became minimal once all the codefendants' pleas were accepted, and Worthy was no longer "joined for trial" with any defendant other than Miller after February 6, 2012.

Stephens says that the necessity of the delay also should be considered. Here, there was and is no necessity to delay Worthy's trial until his codefendants, including Berryan, are sentenced.  Instead, the reverse is true. The government requested delay of Berryan's presentence report and

16

sentencing until the last defendant (here Worthy) goes to trial.  See Tr. of Rule 11 Hearing for Dereck Berryan at 20 (ECF No. 635).  It would be perverse to conclude that the Worthy trial needs to be delayed while the court considers the pending plea agreement when the sentencing of the codefendant is being delayed until Worthy can be tried.[17]  And in fact, the government was prepared to try the Worthy case this month, notwithstanding the pending plea agreement with Berryan who at one time was Worthy's codefendant.

Before it stipulated to the statutory violation at oral argument, the government argued that Worthy could not prevent the government from invoking the exclusion of delays attributable to his codefendants' pending plea agreements because he never moved to sever his trial from them.  Gov's Mem. on Applicability of Subsection 3161(h)(6) of the Speedy Trial Act at 2 (ECF No. 648).  (In Stephens, the defendant had moved for severance before his codefendant had entered a guilty plea.)  The statute does not create such a prerequisite; it says only that the delay is available to "a codefendant as to whom the time for trial has not run and no motion for severance has been granted."  18 U.S.C. § 3161(h)(6).  The circuits are divided on the general principle of requiring a motion to sever as a prerequisite to a defendant's ability to object to the reasonableness of excluding a codefendant's delay.  United States v. Franklin, 148 F.3d 451, 457 (5th Cir. 1998) (discussing circuit split

---

[17] As Stephens stated:  "We note that a contrary ruling would mean that a defendant's trial could be postponed indefinitely any time a codefendant pleads guilty pursuant to a plea agreement that calls for him to testify at the defendant's trial and the district court defers acceptance of that plea agreement until the codefendant's sentencing.  The purpose of § 31657(h)(7) of the Speedy Trial Act does not countenance such a rule."  Stephens, 489 F.3d at 655 n.12.

on whether a severance request is a necessary requirement or simply a factor for the court to consider on a challenge to reasonable excludable delay under subsection (h)(7)).  The Second Circuit treats the First Circuit as having such a requirement.  In Vasquez, 918 F.2d at 336, the court stated:  "In United States v. Mitchell, 723 F.2d 1040 (1st Cir. 1983), the First Circuit explicitly stated that the defendant's failure to make a motion for severance 'amounted to a waiver of any claim that the (h)(7) exclusion was not properly applied.'"  But that is an overly broad reading of Mitchell.  In Mitchell the First Circuit was careful to recount that the trial court there had "pointedly suggested that defendant move for a severance so as to escape the (h)(7) exclusion.  Defendant failed to do so.  We think this amounted to a waiver of any claim that the (h)(7) exclusion was not properly applied."  Mitchell, 723 F.2d at 1048.[18]  Rejecting a trial judge's specific suggestion to seek severance so as to avoid trial delay (I made no such suggestion to Worthy) is far different than merely failing to make a motion in the ordinary course.  Moreover, Vasquez and Mitchell were both cases where joint trials still were a realistic possibility.[19]  They are of doubtful relevance to exclusions of time after entry of a guilty plea by a codefendant on the sole ground that the court has not yet accepted the plea agreement.  After all, motions to sever are designed to secure a separate trial without the

---

[18] In Mitchell the delays were the result of pending motions, the unavailability of Mitchell's attorney and his codefendant's attorney.  The court suggested that the defendant file a motion for severance so as to avoid further trial delay and the government did not object to that procedure.  There were additional delays due to the unavailability of codefendant's counsel, but no motion for severance was ever filed on behalf of the defendant.  See note 11 supra for the change in numbering of (h)(7) and (h)(6).

[19] Vasquez involved delay principally attributable to one codefendant's competency evaluation; Mitchell involved the delay I describe in the preceding footnote.

presence of a codefendant at that trial.  Generally they are considered moot once that codefendant pleads guilty and no longer expects to be tried.  In the absence of a trial judge's "pointed" suggestion (as in <u>Mitchell</u>) that a defendant seek severance to obtain a timely trial, I do not understand the First Circuit to have required a motion to sever as a prerequisite to challenging the reasonableness of a delay caused by a codefendant stopping the clock— especially when the reason is a guilty plea under a plea agreement.  Finally, codefendant Berryan and defendant Worthy are codefendants under the Third Superseding Indictment, which I dismissed as to Worthy by agreement on February 6, 2012.  Berryan is not a defendant under the Fourth Superseding Indictment, the only indictment that applies any longer to Worthy.  As the government conceded at oral argument, the government would have to move for a joint trial to try these two defendants together.  Thus, they can hardly be said at this point to be "joined for trial" for purposes of § 3161(h)(6).  Under all these circumstances, I conclude that failing to move to sever does not doom Worthy's Speedy Trial Act challenge.[20]

Thus, considering the totality of the circumstances, including the purpose of the exclusion and the necessity for the delay, I conclude that it is unjustifiable to exclude from Worthy's Speedy Trial Act calculations the delay between entry of the guilty plea of a codefendant such as Berryan and acceptance of the plea agreement.  As a result, I need not consider whether the

---

[20] Some of the cases say that it can be *a* factor in the reasonableness determination. Considering it as *a* factor, I conclude nevertheless that failing to file a motion to sever does not affect the outcome under the totality of the circumstances as I have described them.

delay should also be considered unreasonable because of prejudice.  Accord Stephens, 489 F.3d at 654.  Without excluding delay resulting from pending plea agreements, more than 70 days of the Speedy Trial Act clock have run.

The Speedy Trial Act provides:  "If a defendant is not brought to trial within the [70 day period after subtracting exclusions], the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2).  I recognize that the government so stipulated for strategic reasons at oral argument on July 27, 2012, but I have considered it necessary to explore the issue so as to determine the statutory remedy, to consider the asserted Sixth Amendment violation, and to guide future Speedy Trial Act calculations in this District.  I now accept the government's stipulation that a Speedy Trial Act violation occurred.  Worthy therefore is entitled to have the Fourth Superseding Indictment dismissed for violation of the Speedy Trial Act.

**2.      *Should the Dismissal Be With or Without Prejudice?***

The remaining Speedy Trial Act question is whether the dismissal should be with or without prejudice.

The Speedy Trial Act provides:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2).  The First Circuit has added the factor of prejudice to the defendant either as a fourth factor, United States v. Scott, 270 F.3d 30, 58 (1st Cir. 2001); United States v. Barnes, 159 F.3d 4, 16 (1st Cir. 1998), or as

part of the third factor, <u>United States v. Dessesaure</u>, 556 F.3d 83, 86 (1st Cir. 2009). I apply all those factors here.

The charge against Worthy is a very serious offense, namely, a multi-month conspiracy involving large amounts of crack cocaine, as well as powder cocaine and heroin; outright possession of cocaine on two occasions with intent to distribute; and use of a communication facility (a telephone) in committing certain of the narcotics offenses. Serious penalties are at stake, especially because the government has filed an Information alleging a prior felony drug conviction. <u>See</u> 21 U.S.C. §§ 851, 841(b)(1)(A); Information Charging Prior Conviction (ECF No. 402).

The facts and circumstances of the case that have led to dismissal are these. Empanelling a jury in July 2012 for a defendant first arraigned in August 2010 is a serious delay.[21] But this has been a complex case with many defendants and a multitude of motions. Undoubtedly, the government has caused some delays (and I have expressed wonderment about its charging procedures in this case[22]). But Worthy himself filed many motions, some of

---

[21] The actual impermissible delay for Speedy Trial Act purposes is 77 days. <u>See</u> note 9 <u>supra</u>.

[22] <u>See</u> Decision and Order on Def. Worthy's Pending Mots. at 1 (ECF No. 572) ("Drug conspiracy charges can present complex issues in trial preparation. Here, the ordinary complexity has been exacerbated by the government's succession of charges—Complaint, Indictment, First Superseding Indictment, Second Superseding Indictment, Third Superseding Indictment, and now Fourth Superseding Indictment (ECF Nos. 1, 28, 51, 94, 232, 507). Not surprisingly, the practice has produced a bevy of defense motions both earlier and now. Although I do not fully comprehend the need for this succession of charging documents, I deal with the case as the government presents it, and I deal with the motions on their individual merits."); Decision and Order on Defs.' Mots. to Dismiss and Gov't Mot. to Dismiss and for Detention at 9-10 (ECF No. 304) ("It is true that in <u>Davis</u>, I said that section 3161(b) 'is essentially a congressional directive for the orderly conduct of criminal proceedings,' designed to 'accelerate the indictment phase of criminal proceedings.' Certainly the repetitive charging documents here are disruptive to both the court, and to a defendant attempting to prepare for trial and the taxpayer who ultimately pays the court-appointed lawyer's fees. But the <u>Davis</u> statement was in respect to interpreting *(continued next page)*

them difficult and complex, that required considerable time and attention, and Worthy himself has requested some delays in the case, and acquiesced in others.[23]   More than once, it was Worthy's motions that delayed setting the case for trial.[24]   Apparently, no one noticed the Speedy Trial Act problems until recently (assistant United States attorneys and defense lawyers have come to rely upon the Clerk's Office Speedy Trial Act calculations), when Worthy filed his motion on June 27, 2012, on the very brink of trial.   That is when it came to light that the Clerk's Office Speedy Trial Act calculations had stopped the Speedy Trial Act clock automatically as to Worthy on account of pending plea agreements of codefendants not yet sentenced, here in particular, Berryan.[25] The First Circuit has described similar administrative failures as primarily the

---

the language of the Speedy Trial Act.  It is not an independent ground for dismissal where there is no Speedy Trial Act violation.").

[23] Worthy filed eight motions for extension of time and all were granted.  See Def.'s Mot. to Extend Deadline to File Pretrial Mots., 2:10-cr-135-DBH (ECF No. 32) (adding 15 days); Def.'s Mot. to Extend Deadline to File Pretrial Mots., id. (ECF No. 37)  (adding 14 days); Def.'s Mot. to Extend Deadline to File Pretrial Mots., 2:10-cr-136-DBH (ECF No. 118) (adding 15 days); Def. Worthy's Consented to Mot. to Extend Deadline to File Pretrial Mots., id. (ECF No. 168) (adding 15 days); Def. Worthy's Mot. to Extend Deadline to File Pretrial Mots., id. (ECF No. 214) (adding 7 days); Def.'s Consented to Mot. to Extend Deadline to File Reply Mem. with Respect to Def.'s Mot. to Suppress, id. (ECF No. 301) (adding 1 day); Def. Worthy's Consented to Mot. to Extend Deadline to File Supplemental Brs. with Respect to Def.'s Mot. to Suppress, id. (ECF No. 319) (adding 4 days); Def. Worthy's Mot. to Extend Deadline to File Supplemental Brs. with Respect to Def.'s Mot. to Suppress, id. (ECF No. 322) (adding 4 days).  Worthy had no objection to four government motions to extend time, and all were granted.  See Mot. for Extension of Time, id. (ECF No. 177) (adding 19 days); Mot. for Extension of Time, id. (ECF No. 329) (adding 11 days); Unopposed Mot. to Extend Time to Respond to Def.'s Mots., id. (ECF No. 533) (adding 13 days); Unopposed Mot. to Extend Time to Respond to Def.'s Mot. to Suppress and Dismiss, id. (ECF No. 591) (adding 8 days).

[24] See, e.g., Docket Endorsement, 2:10-cr-136-DBH (ECF No. 253) dated November 22, 2010: "Please be advised that due to the pending Motions as to defendant Hasan Worthy, this case will not be placed on Judge Hornby's January 3, 2011 criminal trial list."; Docket Endorsement, 2:10-cr-136-DBH (ECF No. 587) dated March 27, 2012 and referring to motions that had been filed, along with a trial brief, on March 26, 2012:  "NOTICE as to HASAN WORTHY – Please be advised that due to the pending Motion to Suppress and to Dismiss, this case has been removed from Judge Hornby's April 2, 2012 criminal trial list."

[25] That practice now has been discontinued.  Such exclusions will no longer be automatic.  To the credit of the Clerk's Office personnel, they are the ones who identified the codefendant exclusion issue in this case, once the Speedy Trial Act motion was filed.

22

fault of the court for Speedy Trial Act analysis.  <u>Scott</u>, 270 F.3d at 58; <u>Barnes</u>, 159 F.3d at 16.   That is not an excuse for the government, because the government also has an obligation to track Speedy Trial Act issues.  <u>Barnes</u>, 159 F.3d at 16-17.  But I do take it into account, because it demonstrates lack of prosecutorial bad faith.  <u>Scott</u>, 270 F.3d at 58; <u>Barnes</u>, 159 F.3d at 17.  I also observe that Worthy himself did not raise the delayed-trial issue until the eve of trial, June 27, 2012, only days before the scheduled jury empanelment on July 2, 2012.  Although I did not treat his failure to file a motion to sever as a fatal flaw in his argument that there was a Speedy Trial Act violation, it is relevant to the question of dismissal with or without prejudice.  If Worthy truly had wanted an earlier trial, he could have requested one at any point through a motion to sever and proceed to trial.[26]  So although the delay has been long, the facts and circumstances do not cry out for dismissal with prejudice.

As for the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, I observe that the case does not involve a re-trial because there has been no trial; instead, the case is *ready* for trial.  Dismissal with prejudice, of course, would give the most emphasis to the seriousness of the Speedy Trial Act requirements, but as I have described, there was here no conscious awareness that the Speedy Trial Act was being violated.   The First Circuit has counseled that "considerations of general deterrence are not dispositive or else dismissal with prejudice would impermissibly become the preferred tool."  <u>Barnes</u>, 159 F.3d at 17-18 (citing

---

[26] On the Third Superseding Indictment until it was dismissed as to Worthy and on the Fourth Superseding Indictment after it was filed.

the statement in <u>United States v. Taylor</u>, 487 U.S. 326, 342 (1988), that "[d]ismissal without prejudice is not a toothless sanction . . ."). Since the First Circuit has not spoken on the Speedy Trial Act issue that arose in this case, and cases from other circuits seem to be divided, <u>compare</u> <u>Stephens</u>, 489 F.3d at 654-55, <u>with</u> <u>Childers</u>, 290 Fed. Appx. at 254-55, dismissal with prejudice would be a harsh remedy.  According to the First Circuit, "dismissal with prejudice is 'a last and rare resort.'" <u>United States v. Franklin</u>, 630 F.3d 53, 58 (1st Cir. 2011) (quoting <u>Dessesaure</u>, 556 F.3d at 85).  Moreover, the administration of justice does not support giving Worthy a free pass without going to trial on these serious charges.

As for prejudice to Worthy, it is true that he has long complained about what he considers to be the government's machinations in the case.[27]  But he has not offered evidence of prejudice from the delay of trial.  In other words, no witnesses have died or left the country; no documents have been destroyed; the delay is not so long as to materially affect memories of what happened.[28]  Worthy argues that during the long delay some codefendants have been persuaded to testify against him.  Def. Worthy's Supplemental Mem. in Supp. of Mot. to Dismiss for Violation of Speedy Trial Rights at 15-16 (ECF No. 649).  But that is not the sort of "prejudice" that is the concern of the Speedy Trial

---

[27] <u>See, e.g.</u>, Def. Worthy's Mot. to Dismiss Superseding Indictment (ECF No. 117); Def. Worthy's Mot. to Dismiss Second Superseding Indictment with Inc. Mem. of Law (ECF No. 167).  To the extent that Worthy's recent motion *in limine* asserts that some required government disclosures were late, a delay in the trial actually may help Worthy.  <u>See</u> Def. Worthy's Mot. in Limine to Exclude Recordings Not Produced in Accordance with the Ct.'s Order Concerning Disc. (ECF No. 645).

[28] According to <u>Dessesaure</u>, "[o]rdinarily, the strongest argument against re-prosecution is prejudice to the defendant—most importantly, loss of witnesses or other impediments to obtaining a fair trial at a later date."  556 F.3d at 86.

Act.[29]  And while Worthy has been highly critical of the government's numerous superseding indictments (see, e.g., Def. Worthy's Mot. to Dismiss Fourth Superseding Indictment for Violation of Speedy Trial Rights, at 6, 11 (ECF No. 618)), they in themselves have not extended the Speedy Trial Act clock, except when they added additional defendants, i.e., the superseding and second superseding indictments.[30]  The single concrete prejudice, certainly a significant one, is that Worthy has been deprived of his liberty for almost two years, without yet being convicted of a federal crime.  Nevertheless, I conclude that it does not support letting Worthy escape confronting these serious charges against him.

The proper remedy for the Speedy Trial Act violation therefore is dismissal without prejudice.

---

[29] If they testify truthfully, it is not cognizable prejudice.  If they testify untruthfully, that is a matter for cross-examination and impeachment.  Worthy does refer to one witness, whom he cannot now locate.  Def. Worthy's Supplemental Mem. in Supp. of Mot. to Dismiss for Violation of Speedy Trial Rights at 16-17 (ECF No. 649).  At Worthy's detention hearing, that person offered to be a third-party custodian for Worthy if Worthy were released.  Tr. of Arraignment and Continued Detention Hr'g at 9-11, 2:10-cr-135-DBH (ECF No. 50).  At oral argument on July 27, 2012, Worthy's lawyer said that he would have testified at trial that Worthy was "not guilty as charged."  At the detention hearing, that person testified that although he (the putative witness) was now clean, he had smoked crack cocaine two months previously.  Tr. of Arraignment at 19-20.  He also testified that he had never known Worthy to do drugs or have them.  Id. at 20.  In closing argument at the detention hearing, however, Worthy's lawyer said that Worthy admitted to drug use "over the last year or so."  Id. at 33.  Under these circumstances, the reference to this unlocatable witness (and I do not know when he became unlocatable) is not a sufficient proffer of prejudice to justify dismissal with prejudice.

[30] "If, after an indictment or information has been filed, a complaint, indictment, or information is filed which charges the defendant with the same offense or with an offense required to be joined with that offense, the time limit applicable to the subsequent charge will be determined as follows:

> (3)  If the original indictment or information is pending at the time the subsequent charge is filed, the trial shall commence within the time limit for commencement of trial on the original indictment or information.

United States District Court for the District of Maine Speedy Trial Plan § 6(d)(3).

## Sixth Amendment

Worthy has also invoked his Sixth Amendment constitutional right to a speedy trial. The First Circuit has stated: "Although unusual, it is possible for a delay that does not violate the [Speedy Trial Act] to run afoul of the Sixth Amendment's guarantee of a speedy trial." Casas, 425 F.3d at 33. See also 18 U.S.C. § 3173 (Speedy Trial Act does not bar any constitutional claim of speedy trial denial). Here, I have found (and the government has stipulated) a Speedy Trial Act violation, but the remedy is dismissal without prejudice. If there is a Sixth Amendment violation, dismissal *with* prejudice might be required to vindicate that constitutional right. So I perform the constitutional analysis.

The Supreme Court has identified four factors to balance in considering an asserted Sixth Amendment violation: the length of the delay; the reasons for the delay; the defendant's assertion of his right to a speedy trial; and prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530-33 (1972).

The constitutional Speedy Trial Act clock begins with the first to occur of arrest or indictment. United States v. Munoz-Amado, 182 F.3d 57, 61 (1st Cir. 1999). Here, that was August 6, 2010. The trial delay here until July 2012 far exceeds the presumptively prejudicial delay of one year[31] and favors Worthy.

Delay, however, was caused by the number of defendants, the multiplicity of motions and events (the number of docket entries now is well in excess of 600), and the complexity of the case. Worthy himself filed complex

---

[31] Doggett v. United States, 505 U.S. 647, 652 n.1 (1992) ("Depending on the nature of the charges, the lower courts have generally found post accusation delay 'presumptively prejudicial' at least as it approaches one year."); United States v. Trueber, 238 F.3d 79, 87 (1st Cir. 2001) (citing Doggett).

motions (certainly Worthy was entitled to file the motions and have them heard, but he cannot then legitimately complain about the ensuing trial delays), filed his own requests for delay, and agreed to delays sought by the government.  See Munoz-Amado, 182 F.3d at 62 (pointing to the delaying role the defendant's pretrial motions played).  The excessiveness of the delay I found under the statutory analysis resulted from a 70-day limit and the improper reliance on codefendants' pending plea agreements.  But those exclusions and attendant delays accrued on account of Clerk's Office procedures, not challenged at the time by either the government or Worthy.

On the third factor—a defendant's assertion of his constitutional right to a speedy trial—although Worthy raised certain *statutory* Speedy Trial Act rights earlier in the case, they were limited to the timeliness of the indictment and so-called gilding of the charge.  Decision and Order on Defs.' Mots. to Dismiss and Gov't Mot. to Dismiss and for Detention at 5-13 (ECF No. 304); Decision and Order on Def. Worthy's Pending Mots. at 2-4 (ECF No. 572).  Worthy did not invoke the excessive trial-delay argument until June 27, 2012, when jury empanelment was scheduled for July 2, 2012.[32]   The First Circuit has characterized a defendant's "eleventh hour" filing of a speedy trial motion as demonstrating a "lack of enthusiasm for the speedy trial right which he now asserts."  Munoz-Amado, 182 F.3d at 62.  Here, as I have said, Worthy himself previously caused trial delays by his motion filings.  See note 22 supra.

---

[32] As I said earlier, I am unpersuaded by Worthy's argument that somehow his earlier challenges to the timeliness of the various indictments translated into a challenge to the delay of trial.  See note 4 supra.

On the fourth factor, prejudice to Worthy, I have already assessed prejudice in my Speedy Trial Act analysis of whether to dismiss the indictment with or without prejudice, and I concluded that the prejudice is limited to the pretrial incarceration.   The First Circuit has said that pretrial incarceration during a 19-month delay "by itself, is insufficient to establish a constitutional level of prejudice."   <u>Munoz-Amado</u>, 182 F.3d at 63.   Worthy's pretrial incarceration prejudice here—just under 23 months when he first filed his motion—is not materially different.

Consequently, for Sixth Amendment purposes, I conclude that the delay was serious, but that for the most part it had good reason, that Worthy was not prompt in asserting his right to an earlier trial, and that the prejudice to Worthy is serious but not destructive of his right to a fair trial.   Under the balancing analysis of <u>Barker v. Wingo</u>, I conclude that Worthy's Sixth Amendment right was not violated.

## CONCLUSION

Accordingly, the defendant's motion to dismiss is **GRANTED**, but **WITHOUT PREJUDICE** to the government's seeking a new indictment.[33]

**SO ORDERED.**

**DATED THIS 1ST DAY OF AUGUST, 2012**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[33] In one of his legal memoranda, Worthy requested an evidentiary hearing, and at the trial management conference, I invited Worthy's lawyer to make a proffer of any prejudice, which he did. Decision and Order on Defs.' Mots. to Dismiss and Gov't Mot. to Dismiss and for Detention at 12-13 (ECF No. 304). Here, I see no reason for an evidentiary hearing. There are no material issues of fact on the violation or on the decision to dismiss with or without prejudice.